IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DOUGLAS ALAN FELDMAN,<br>*Petitioner,*<br><br>V.<br><br>RICK THALER, Director,<br>Texas Department of Criminal Justice<br>Correctional Institutions Division,<br>*Respondent.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:07-CV-1284-P<br><br>(Death Penalty Case) |

## MEMORANDUM OPINION AND ORDER

Petitioner Douglas Alan Feldman ("Feldman") has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application is denied.

## I. PROCEDURAL HISTORY

Petitioner was convicted of capital murder and sentenced to death. *See State v. Feldman*, No. F99-00068-P J (Crim. Dist. Ct. No. 3, Dallas County, Texas, Aug. 31, 1999). His conviction and sentence were affirmed on direct appeal. *See Feldman v. State*, 71 S.W.3d 738 (Tex. Crim. App. 2002). Petitioner filed his original application for state post-conviction relief from this conviction and sentence during the pendency of his direct appeal. The application was denied by written order. *See Ex parte Feldman*, No. WR-66,691-01, 2007 WL 1139450 (Tex. Crim. App. 2007) (unpublished). Petitioner filed his federal petition for writ of habeas corpus on April 17, 2008, within the one-year limitations period

## II. FACTUAL BACKGROUND

The Texas Court of Criminal Appeals ("CCA") summarized the evidence in part as follows:

The evidence in the instant case showed that during the late night hours of August 24, 1998, appellant was riding his motorcycle down Highway 75 in Collin County. Appellant was positioned in the right hand lane near the shoulder when Robert

Everett, traveling at least seventy to seventy-five miles per hour in his eighteen-wheeler truck, suddenly passed appellant and then moved into appellant's lane, passing only twelve to eighteen inches from appellant's left hand. Appellant, initially in fear for his life, became enraged and gave chase because he felt that he "needed to stop that man." During the chase, appellant took out a weapon and fired several rounds into the back of Everett's trailer. When Everett continued driving, appellant reloaded his gun, drove along side the truck's cab, and fired several times directly at Everett, killing him.

After the shooting, appellant stopped for a period of time in a mall parking lot off the highway. He then rode back to where Everett's truck had stopped to determine whether Everett was dead. Appellant then headed for home. After riding approximately eleven miles, however, appellant passed an Exxon service station where Nicolas Velasquez, a tanker truck driver for Exxon, was refilling the gas supply for the station. Velasquez had just finished filling the ground tanks and was walking towards the service station entrance when appellant drove into the station area and shot Velasquez twice in the back, killing him. Appellant finally drove home.

Over a week later, Antonio Vega was standing outside a Jack in the Box restaurant at 1:15 p.m. talking on a pay telephone when appellant, driving a silver Land Rover, drove by and opened fire, injuring Vega. A nearby witness noted appellant's license number and reported the information to the police. When officers apprehended appellant, they recovered a loaded nine-millimeter weapon, an additional pistol magazine, a Glock pistol, seventy-five hollow-point bullets, and one hundred ninety four round nose bullets. Another loaded magazine was recovered from appellant's pocket. Testing on the first weapon and on the spent shell casings from the three crime scenes confirmed that this weapon had been used at all three locations.

Appellant was indicted for killing Nicolas Velasquez by shooting him with a firearm and, during the same criminal transaction, killing Robert Stephen Everett by shooting him with a firearm. In the alternative, appellant was indicted for killing Nicolas Velasquez by shooting him with a firearm and, during a different criminal transaction but pursuant to the same scheme and course of conduct, killing Robert Stephen Everett by shooting him with a firearm. After his arrest, but prior to trial, appellant admitted responsibility for the shootings in letters that he mailed from jail to a police detective and to one of the prosecutors working on the case. In the letter to the police detective, appellant stated that the murders resulted from a traffic altercation with Everett, "after which [appellant] erupted in rage and subsequently committed the attacks[.]"

Appellant also testified at trial and admitted shooting the victims. Appellant told the jury about the traffic altercation with Everett and his decision to shoot Everett instead of allowing him to go speeding down the highway. He noted that he returned to Everett's truck because, "There was a part of me that wanted to make sure Mr.

2

Everett was dead." Even as he testified at trial, appellant admitted that he was still angry about the incident. He explained that he shot Velasquez because he saw him standing beside an eighteen-wheeler, and "I exploded again in anger[.]"

*Feldman v. State*, 71 S.W.3d at 751-52 (footnotes omitted).

## III. ISSUES PRESENTED

In four grounds for relief, Petitioner complains that (1) the trial court improperly refused to give the jury an instruction on the lesser-included offense of murder, (2) the trial court improperly granted a challenge to exclude a qualified juror for cause, (3) the trial court improperly overruled a challenge to unqualified jurors, and (4) he was deprived of the effective assistance of counsel because his trial counsel failed to investigate and present evidence of his bipolar disorder in the punishment stage of his trial.

## IV. STANDARD

This habeas petition is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Consideration of the merits of exhausted claims is controlled by § 2254(d).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim——
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* The AEDPA limits rather than expands the availability of habeas relief. *See Fry v. Pliler*, 551 U.S. 112, 119, 127 S.Ct. 2321, 2327, 168 L.Ed.2d 16 (2007); *[Terry] Williams v. Taylor*, 529 U.S.

362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011). Federal habeas review under AEDPA is highly deferential. *Id.,* 131 S.Ct. at 788; *Renico v. Lett*, 559 U.S. ___, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) ("AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.").

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant [a writ of habeas corpus] if the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.

*Williams v. Taylor*, 529 U.S. at 412-13, 120 S.Ct. at 1523. "A 'run-of-the-mill state-court decision applying the correct legal rule' would not fit within this exception as 'diametrically different' or 'opposite in character or nature' from Supreme Court precedent." *Beazley v. Johnson*, 242 F.3d 248, 256 (5th Cir. 2001) (quoting *Williams*, 529 U.S. at 406).

"Under the 'unreasonable application' clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. "A state court's decision will be based on an unreasonable application of clearly established federal law when it is objectively unreasonable." *Kutzner v. Johnson*, 242 F.3d 605, 608 (5th Cir. 2001). "[A]n unreasonable application of federal law is different from an

4

incorrect application of federal law." *Williams*, 529 U.S. at 410 (emphasis omitted). "Under §

2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ

simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly. Rather, that application

must also be unreasonable." *Id.* at 411. "[A] federal court is not to substitute its judgment for that

of the state court. Rather under AEDPA, federal habeas relief is proper only if the state habeas court

applied federal law in an 'objectively unreasonable' manner." *Schaetzle v. Cockrell*, 343 F.3d 440,

447 (5th Cir. 2003).

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th

Cir. 2000); *Clark v. Quarterman*, 457 F.3d 441, 444 (5th Cir. 2006). Under § 2254(d)(2), federal

courts must give deference to state court findings unless they were "based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding." *Hill v.

Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The resolution of factual issues by the state court is

presumptively correct and will not be disturbed unless the prisoner rebuts the presumption by clear

and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## V. LESSER-INCLUDED OFFENSE INSTRUCTION

In his first claim, Petitioner argues that his rights under the Fourteenth Amendment as

construed by *Beck v. Alabama*[1] were violated when the trial court refused to grant his request for a

jury instruction on the lesser-included offense of murder. Feldman claims it was necessary in the

event that the jury either found that he did not commit one of the murders or that they were not both

---

[1]447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

5

committed pursuant to the same criminal transaction or same scheme or course of conduct. (Pet. at

5-11; Vol. 38 of the State Reporter's Record, "RR" at 86-87; State Clerk's Record, "CR" at 159-63.)

## A. Applicable Law

The Supreme Court's opinion in *Beck* held that "the jury [in a capital case] must be permitted

to consider a verdict of guilt of noncapital offense 'in every case' in which 'the evidence would have

supported such a verdict.'" *See Hopper v. Evans*, 456 U.S. 605, 610, 102 S.Ct. 2049, 2052, 72

L.Ed.2d 367 (1982). This would ensure that a jury has another option besides either imposing a

death sentence or acquitting the defendant.[2]

"Although *Beck*, strictly speaking, 'holds only that a state cannot impose a blanket ban on

the giving of lesser-included-offense instructions in a capital case,'" the United States Court of

---

[2]In *Schad v. Arizona*, 501 U.S. 624, 646, 111 S.Ct. 2491, 2504, 115 L.Ed.2d 555 (1991), the death-row inmate argued for an extension of *Beck*, contending that "the due process principles underlying *Beck* require that the jury in a capital case be instructed on every lesser included noncapital offense supported by the evidence." The Supreme Court disagreed.

> Petitioner misapprehends the conceptual underpinnings of *Beck*. Our fundamental concern in *Beck* was that a jury convinced that the defendant had committed some violent crime but not convinced that he was guilty of a capital crime might nonetheless vote for a capital conviction if the only alternative was to set the defendant free with no punishment at all. We explained:
>
>> "[O]n the one hand, the unavailability of the third option of convicting on a lesser included offense may encourage the jury to convict for an impermissible reason-its belief that the defendant is guilty of some serious crime and should be punished. On the other hand, the apparently mandatory nature of the death penalty [in Alabama] may encourage it to acquit for an equally impermissible reason-that, whatever his crime, the defendant does not deserve death.... [T]hese two extraneous factors ... introduce a level of uncertainty and unreliability into the factfinding process that cannot be tolerated in a capital case."
>
> We repeatedly stressed the all-or-nothing nature of the decision with which the jury was presented.

*Id.*, 501 U.S. at 646, 111 S.Ct. at 2504-05 (internal citations omitted); *see also Howell v. Mississippi*, 543 U.S. 440, 444-45, 125 S.Ct. 856, 859, 160 L.Ed.2d 873 (2005) (per curiam) (in which the Supreme Court found support for the Mississippi Supreme Court's interpretation that *Beck* was inapplicable where the jury has the additional option of life imprisonment). Circuit precedent applies *Beck* to Texas cases. *See Foster v. Dretke*, No. 05-70016, 2006 WL 616980 at *8-9 (5th Cir. Mar.13, 2006) (unpublished); *Cantu v. Quarterman*, No. H-07-CV-3016, 2009 WL 275172 at *15 n.13 (S.D. Tex., Feb. 4, 2009), *COA denied*, 341 Fed. Appx. 55 (5th Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S.Ct. 2102, 176 L.Ed.2d 733 (2010).

Appeals for the Fifth Circuit has consistently applied *Beck*'s holding when the state trial court refuses a lesser-included-offense instruction. *Cordova v. Lynaugh*, 838 F.2d 764, 767 (5th Cir. 1988) (quoting *Reddix v. Thigpen*, 805 F.2d 506, 511-12 (5th Cir. 1986))[3]; *Ransom v. Johnson*, 126 F.3d 716, 724-25 (5th Cir. 1997); *Bell v. Watkins*, 692 F.2d 999, 1004-05 (5th Cir. 1982); *Cantu v. Quarterman*, 341 Fed. Appx. 55, 59-60 (5th Cir. 2009), *cert. denied*, ___ U.S. ____, 130 S.Ct. 2102, 176 L.Ed.2d 733 (2010). Under *Beck*, a state trial court may not refuse a lesser-included-offense instruction "if the jury could rationally acquit on the capital crime and convict for the noncapital crime." *East v. Scott*, 55 F.3d 996, 1005 (5th Cir. 1995); *see also Aguilar v. Dretke*, 428 F.3d 526, 531 & n.2 (5th Cir. 2005) (noting that this "Texas law is consistent with the federal constitutional rule"). "It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. Rather, there must be some evidence directly germane to a lesser-included offense for the factfinder to consider before an instruction on a lesser-included offense is warranted." *Dowthitt v. Johnson*, 230 F.3d 733, 757 (5th Cir. 2000) (quotation omitted); *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997).

In Texas, the state courts apply a two-prong test to decide whether a defendant is entitled to a lesser-included-offense charge. *See Aguilar*, 428 F.3d at 531 n.2 (citing *Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App.1993)). "The first requirement is that 'the lesser included offense must be included within the proof necessary to establish the offense charged.' The second prong requires that 'some evidence must exist in the record that if the defendant is guilty, he is guilty only of the lesser offense.'" *Id.* (quoting *Rousseau*, 844 S.W.2d at 672).

---

[3] *Cordova* has effectively been overruled in part on other grounds. *See Vanderbilt v. Collins*, 994 F.2d 189, 195 (5th Cir. 1993).

B. **Analysis**

The CCA applied this two-prong test to the evidence submitted in Petitioner's case, and concluded that the evidence supported one of the capital murder theories submitted, but not the other. It first determined that the first prong was satisfied: that the offense of murder is a lesser-included offense of the capital-murder offenses charged. *Feldman*, 71 S.W.3d at 750. It then carefully reviewed the evidence presented at trial (that both of the murders within a short time were committed because the defendant was angry at truck drivers and believed them both to be truck drivers) and the two theories submitted for finding Feldman guilty of capital murder. *Id.* at 751-53.

> At trial, the evidence showed that appellant became enraged by Everett's driving and proceeded to chase him down and shoot him. He then went to a parking lot for a while before returning to the scene to see if his victim was dead. After this, appellant, by his own claim, started to drive home. It was only when he saw a tanker truck parked at a service station along the way that appellant again lashed out in anger, killing another person. The total amount of time between the two murders was approximately 45 minutes.

*Id.* at 753. The CCA determined that under this evidence, a rational juror could have acquitted Feldman under one of the capital-murder theories presented at trial--that both murders were committed during the "same criminal transaction"--and yet have found him guilty of the lesser-included offense of murder.[4] Under the other theory, however, there was no evidence upon which a rational juror could have found Feldman guilty only of the murders of both of these victims and not also that they were committed pursuant to the "same scheme or course of conduct," which

---

[4]The CCA interpreted the phrase "same criminal transaction" to mean "a continuous and uninterrupted chain of conduct occurring over a very short period of time ... in a rapid sequence of unbroken events." *Id.* at 752-53 (citing *Jackson v. State*, 17 S.W.3d 664, 669 (Tex. Crim. App.2000); *Rios v. State*, 846 S.W.2d 310, 311-312 (Tex. Crim. App.1992); *Vuong v. State*, 830 S.W.2d 929, 941 (Tex. Crim. App.1992). It then explained, that from the evidence presented at trial"a rational juror could have concluded that there was in fact a sufficient break between the two murders such that they did not occur in a 'sequence of unbroken events.' Hence, a rational jury could have acquitted appellant of this theory of capital murder under these facts." *Id.* at 753.

includes serial murders.[5] Feldman attempted to make the required showing by pointing to evidence that he suggested would make the second murder "motiveless," but this was rejected by the CCA.

> The evidence in this case shows that [Feldman] became enraged because of a truck driver's behavior and so he killed him. [Feldman]'s own testimony then indicated that he became enraged anew when he saw the second truck driver later that same night and, therefore, he killed him. The jury was then presented with evidence of a third attack a little more than a week later on a person appellant thought was a truck driver.

> [Feldman] points to his trial testimony that he killed the first truck driver because that driver almost ran him down, but that he had no motive at all for killing the second truck driver. Therefore, he argues, his testimony of the second "motiveless" murder is "some evidence" from which a rational trier of fact could rationally conclude that these two murders were not committed pursuant to the same scheme or course of conduct. We disagree. The appellant did not dispute that he killed both truck drivers in the same evening with the same gun while out on a single car trip. He shot and killed the first truck driver with four gunshots to the chest and back and the second victim with two gunshots to the chest and back. He admitted that he shot the first truck driver in a fit of rage for "what he did," and that when he saw the second truck driver he "exploded in anger" again and drove by and shot him as well.

*Id.* at 753-54. This Court has reviewed this claim and the record of evidence in the case as a whole and agrees with the CCA that there is no evidence upon which a rational jury could have found the defendant guilty of murdering both victims and not also found that the two offenses were committed in the "same scheme or course of conduct" as this phrase is interpreted by the state courts. Therefore, the state court has properly applied the Supreme Court's opinion in *Beck*.

Feldman argues that this holding of the CCA was contrary to *Beck* in two ways. He first argues that the state-court decision was unreasonable as a matter of constitutional law because it incorrectly held, in effect, that no rational jury could fail to find that the murders occurred in the

---

[5]The CCA reviewed the legislative history of the phrase "same scheme or course of conduct" and determined that the state legislature intended this provision to embrace "serial" murders. *Id.* at 753. It contrasted this provision with the "same transaction" and cited an example of the "same scheme or course of conduct" as "one who, 'e.g. kills all Senators over the course of a year for snubbing his legislation.'" *Id.*

"same scheme or course of conduct" as defined by the state courts.[6] (Pet. at 8-9.) However, this definition is entirely a construction of state law and the CCA's application of this definition is also a matter of state law. "Under § 2254, federal habeas courts sit to review state court misapplications of federal law. A federal court lacks authority to rule that a state court incorrectly interpreted its own law." *Charles v. Thaler*, 629 F.3d 494, 500-01 (5th Cir. 2011) (citing *Schaetzle v. Cockrell*, 343 F.3d at 448-49, *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995), and *Moreno v. Estelle*, 717 F.2d 171, 178–79 (5th Cir. 1983)). Therefore, federal habeas relief is not available on this argument.

Feldman next argues that the existence of alternate theories would entitle him to a lesser-included-offense instruction if evidence existed that would support such a noncapital instruction under any of the theories charged. (Pet. at 9-11.) Since the state court found that he would have been entitled to an instruction under one of the theories if it had been the only one charged, he argues that the CCA was unreasonable to rule that he was not entitled to the instruction because it would not be warranted under the remaining theory. (Pet. at 10.) However, this would contradict state law, which does not authorize a lesser-included-offense instruction unless "there is evidence which, if believed, refutes or negates every theory which elevates the offense from the lesser to the greater." *Arevalo v. State*, 970 S.W.2d 547, 549 (Tex. Crim. App. 1998). Feldman does not disagree with this expression of state law or that it includes this requirement, but asserts that the rule of *Arevalo* itself violates *Beck*. (Reply at 1-4.) However, *Beck* imposes no such limitation, and the argued extension would exceed this Court's authority to grant habeas relief under the AEDPA.

---

[6]Feldman also points out that this definition was not included in the instructions to the jury. (Pet. at 8.) Since *Beck* does not address the specificity required in jury instructions, such an argument would constitute an extension beyond what the Supreme Court has clearly established for purposes of federal habeas review. *See* 28 U.S.C. § 2254(d)(1). The argued extension would also violate the nonretroactivity doctrine of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

The decision of the CCA to deny this appellate point was neither contrary to nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1). Therefore, Petitioner's first claim is denied.

## VI. JUROR CHALLENGES

In his second and third claims, Feldman complains of trial court rulings on challenges for cause made against potential jurors.

### 1. Exclusion of Venireperson for Cause

In his second claim, petitioner contends that his right to an impartial jury and due process of law was deprived to him in violation of the Sixth and Fourteenth Amendments to the United States Constitution by the exclusion from jury service for cause of a qualified veniremember on account of her conscientious scruples against the death penalty. (Pet. at 11-15.) For the reasons set forth below, this claim is denied.

### A. Applicable Law

The Sixth Amendment protects the right to a fair trial before an impartial jury. In *Witherspoon v. Illinois*, 391 U.S. 510, 512-23, 88 S.Ct. 1770, 1772-78, 20 L.Ed.2d 776 (1968), the Supreme Court held that the prosecution's use of an Illinois statute that excluded for cause any prospective juror with "conscientious scruples" against capital punishment to eliminate nearly half of the venire did not result in a jury that reflected the "conscience of the community," but rather "stacked the deck" in favor of the prosecution in violation of the Sixth Amendment. Later, the Supreme Court clarified that "the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment" is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with

his instructions and his oath.'" *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980)); *Drew v. Collins*, 964 F.2d 411, 416-17 (5th Cir. 1992). Even an expressed willingness to follow the law does not necessarily overcome other indications of bias. *See Morgan v. Illinois*, 504 U.S. 719, 735, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). A prospective juror may believe she can follow the law and yet will actually be so biased in one direction or another that her inclusion would infect a trial with fundamental unfairness. *See Morgan*, 504 U.S. at 735; *Varga v. Quarterman*, 321 Fed. Appx. 390, 395 (5th Cir.), *cert. denied*, __ U.S. ___, 130 S.Ct. 797, 175 L.Ed.2d 562 (2009).

In applying this standard, *Witt* also explained that the presumption of correctness now imposed under § 2254(e)(1) applies to the trial court's determination of a challenge for bias. 469 U.S. at 430-31, 105 S.Ct. at 855-56. "[S]uch a finding is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province." *Id.*, 469 U.S. at 428, 105 S.Ct. at 854 (footnote omitted). The trial court need not detail its reasoning or explicitly conclude that a prospective juror is biased, so long as it is evident from the record. *See id.*, 469 U.S. at 430, 105 S.Ct. at 855. Now, the AEDPA requires even greater deference to the state trial court's determinations. *See* 28 U.S.C. § 2254(d) and (e).

**B. Analysis**

In the instant case, the attorneys for both parties extensively examined prospective juror D. Dreifke, who eventually stated that she could not participate in this process and answer the questions in a way that would result in a death penalty. The record reflects that this prospective juror had not thought about the death penalty much before completing the juror questionnaire, but that afterwards

she gave it a lot of thought. (21 RR at 115.) She explained her concerns, including, "how it would affect me afterwards . . . maybe psychologically and scare me, things like that, would I have recurring dreams, things like that. . . . . Plus, too, evidence can, you know, seeing pictures and things like that can also be disturbing." (*Id.* at 115.) At first, she answered the question whether she was up to the task "yes" (*Id.* at 116), but then in response to the very next question about whether she was sure, she expressed doubts about whether she could do that. (*Id.* at 117.) When asked about these doubts, she explained:

> I just have doubts. I have I mean, I thought when I filled out this questionnaire, I thought, oh, I could do that, and then you start thinking, you start feeling this is another person's life, and you're sequestered in a jury room and things are, you know, down to the wire, and, you know, are really -- that on it at that point, are you just ready to go and everybody else is ready to get it over with, things like that.

(*Id.* at 117.) While she agreed with having a death penalty (*Id.* 118-19), she expressed reservations about whether she could participate in the process in response to the prosecutor's questions.

Q.     . . . do you think you're the type of individual that could answer the questions, knowing that will result in the execution of another man?

A.     I don't think I could. I don't think I could.

Q.     And there's nothing wrong with that. That's why we talk to hundreds of people. That's why we brought down 700, because we know there's a lot of people that, even though they believe in it philosophically, they can't do it. And we cannot force anybody in there. So today is your opportunity, and I appreciate your honesty and your openness. And I apologize if I took you too close to that fire.

A.     No, it helped.

Q.     I had to do that because you have to have these things resolved before you go in that box.

A.     Right.

Q. And if you just honestly feel you can't do it, I mean, you're going to walk out of here and we're not going to think twice, we're just going to go on to the next person. So, again, you're telling me that you couldn't participate in it?

A. I don't think I could do it.

(Discussion at counsel table.)

Q. (By Mr. Kirlin) Just so the record is clear, Ms. Dreifke, you understand if you took the oath to follow the law, if the evidence is there, basically, if we convinced you, we had the evidence, that would be something you would have to do, and it would just go against your conscience, basically; right?

A. Right.

Q. A burglary case or some other case where the death penalty is not an issue, it sounds like you would be a fine juror, but it's just this issue of being required, if the evidence is there, to basically

A. Sentence someone to ending their life, yes.

(*Id.* at 129-30.) Before this final exchange, the prospective juror provided other clues about her concerns and reluctance. (*Id.* at 124, 125.) The prosecutor even commented on the juror's demeanor, which indicated that the reality of it did not set well with her. (*Id.* at 128.) The defense attorneys asked no questions (*Id.* at 130) and the Court immediately granted the State's challenge for cause. (*Id.*) The CCA observed,

> Because Dreifke vacillated on her ability to follow the law and ultimately told the court that she was not sure whether she could perform the duty entrusted her, the trial judge was within his discretion in determining that her views on capital punishment would have prevented or substantially impaired the performance of her duties as a juror in accordance with her instructions and her oath.

*Feldman v. State*, 71 S.W.3d at 750 (citing *Wainwright, supra*). This finding appears correct from the record and has not been shown otherwise.

Feldman states that this potential juror was "not against the death penalty" (Pet. at 13), "never indicated any opposition to capital punishment at all" (Pet. at 14), and that "she does not

oppose the death penalty." (Pet. at 15.) These assertions find support in the record. (21 RR at 118-19, 120-21, 123-24, 125.) Therefore, it appears that she did not have conscientious scruples against the death penalty and believed we should have it, but instead had an emotional or psychological discomfort with the idea of personally making a verdict that would result in an execution. Feldman asserts that the prosecutor simply convinced the potential juror to opt out of jury service (Pet. at 14), but he also argues that she was not a "vacillating" juror. The record suggests otherwise.

The trial court was entitled to rely upon the answers under oath, and the CCA gave proper deference to the trial court that was able to judge her demeanor. This Court is in no better position. Accordingly, the state court's denial of this claim was neither unreasonable nor contrary to Supreme Court precedent. Petitioner's second claim for relief is denied.

## 2. Denial of Challenges for Cause

In his third claim, Petitioner complains that the trial court's denial of his challenges for cause to excuse venirepersons G. Henry, D. Garcia and R. Martinez violated his right to an impartial jury and due process of law in violation of the Sixth and Fourteenth Amendments. (Pet. at 15-17.) His complaints include the claim that each veniremember would either peremptorily hold a law enforcement witness to be more credible than a lay witness, expect Petitioner to prove his innocence, or automatically find him to be a continuing threat to society if convicted unless he proved

15

otherwise.[7] (Pet. at 16.) However, the record indicates no more than vacillating jurors.[8] Therefore, the CCA reasonably applied federal law in deferring to the judgment of the trial court.

As stated above, "a juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Adams*, 448 U.S. at 45, 100 S.Ct. at 2526; *Wainwright v. Witt*, 469 U.S. at 424, 105 S.Ct. at 852. A capital defendant may challenge for cause any prospective juror who will automatically vote for the death penalty in every case and will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do. *See Morgan v. Illinois*, 504 U.S. at 729, 112 S.Ct. at 2229-30; *see also Buchanan v. Angelone*, 522 U.S. 269, 276, 118 S.Ct. 757, 761, 139 L.Ed.2d 702 (1998) ("the sentencer may not be precluded from considering, and may not refuse to consider, any constitutionally relevant mitigating evidence"). However, this does not require a juror to consider any particular circumstance as mitigating, nor does it require a court to excuse a prospective capital juror for cause who might view evidence offered in mitigation as aggravating. *See Soria v. Johnson*, 207 F.3d 232, 244 (5th Cir. 2000).

---

[7]Feldman does not separately identify the precise disqualifications that would exclude each of the objectionable jurors, but relies upon conclusory statements that "during *voir dire*, they gave answers which clearly demonstrated their bias or prejudice against some legal doctrine or principle upon which Feldman was entitled to rely." (Pet. at 16, citing *Irvin v. Dowd*, 366 U.S. 717, 721-22, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)). Such conclusory pleadings may not support federal habeas relief. *See Murphy v. Dretke*, 416 F.3d 427, 436-38 (5th Cir. 2005); *Beazley v. Johnson*, 242 F.3d 248, 270 (5th Cir. 2001); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983). Respondent asserts this defect as precluding relief (Ans. at 23-24), and also details the specific reasons relied upon in support of the CCA's decisions regarding each of the challenged jurors, including citations to the record. (Ans. at 25-27.)

[8]Further, the trial court granted Feldman an additional peremptory strike. *See Feldman v. State*, 71 S.W.3d at 744; (27 RR at 58). Therefore, even if the trial court improperly failed to exclude a juror, the petitioner must show that the trial court improperly denied challenges for cause on at least two different venire members in order to show harm. *Id.*; *see also Ross v. Oklahoma*, 487 U.S. 81, 85, 108 S.Ct. 2273, 2277, 101 L.Ed.2d 80 (1988) (challenging party must properly preserve the right to challenge in accordance with state law).

Feldman acknowledges that the jurors each answered in some portion of their voir dire in a manner that would sustain the challenge for cause, and that they were all vacillating prospective jurors. (Pet. at 16.) He also admitted that to the extent that state law would have authorized the CCA to defer to the trial court's rulings, such a decision is unreviewable by this court. (Pet. at 17, citing *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991)). However, Feldman asserts that such deference would constitute unlimited discretion afforded trial judges in violation of the Sixth Amendment. (Pet. at 16-17.) This novel theory is not clearly established federal law and cannot form the basis for federal habeas relief. *See* 28 U.S.C. § 2254(d)(1). Even so, this complaint does not reflect the careful analysis conducted by the CCA, which specifically addressed in great detail each of the challenges for cause and the record. *See Feldman v. State*, 71 S.W.3d at 744-48. Feldman has not shown the CCA's decision to be incorrect, much less unreasonable. Feldman's third claim for relief is denied.

## VII. INEFFECTIVE ASSISTANCE OF COUNSEL

In Petitioner's fourth and final claim, he contends that his right to the effective assistance of counsel in the punishment phase of his trial was denied because his trial counsel failed to investigate and present evidence of a mental illness, namely Bipolar I Disorder. (Pet. 17-23.)

### A. Applicable Law

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel. The two-pronged standard by which a claim of ineffective assistance of counsel is measured is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The first prong of Strickland requires the defendant to show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2064. The second prong of this test requires the defendant to

show prejudice by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.*, 466 U.S. at 694, 104 S.Ct. at 2068. The court need not address both prongs of the *Strickland* standard if the complainant has made an insufficient showing on one. *Strickland*, 466 U.S. at 697, 700, 104 S.Ct. 2069, 2071.

A review of the merits of this claim requires the Court to look to the "norms of adequate investigation in preparing for the sentencing phase of a capital trial, when the defense counsel's job is to counter the State's evidence of aggravated culpability with evidence in mitigation." *Rompilla v. Beard*, 545 U.S. 374, 380-81, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005). Mitigating evidence can be critically important in a death penalty case. *See Moore v. Johnson*, 194 F.3d 586, 612 (5th Cir. 1999)(citing *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976), and *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 875, 71 L.Ed.2d 1 (1982)). Trial counsel defending a death penalty case has an "obligation to conduct a thorough investigation of the defendant's background," *[Terry] Williams v. Taylor*, 529 U.S. at 396, 120 S.Ct. at 1515 (citing ABA Standards for Criminal Justice 4-4.1, commentary, p. 4-55 (2d ed.1980)), which "should comprise efforts to discover all reasonably available mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor." *Wiggins v. Smith*, 539 U.S. 510, 524, 123 S.Ct. 2527, 2537, 156 L.Ed.2d 471 (2003)(quoting *Guidelines* 11.4.1(C), p. 93 (1989) (emphasis omitted).

### B. Analysis

The state habeas court made extensive findings that were adopted by the CCA in its order denying habeas relief. (State Habeas Finding, "SHF", Nos. 63-183; State Habeas Record, "SHR",

at 320-50). *Ex parte Feldman*, 2007 WL 1139450 at *1. Feldman presents the same evidence before the state habeas court, but has not shown these findings to be incorrect, much less by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Trial counsel obtained the assistance of a forensic psychiatrist, Jaye Crowder, M.D., who brought in a "team of professionals" including a psychologist, in the preparation and presentation of his mitigation case. (Oatman Aff. at 1-2; SHF No. 63; SHR at 320-21.) Petitioner contends that the prior experts failed to discover this condition and he tendered an affidavit of an expert obtained in the state postconviction process in support of his contentions. (Pet. at 17-20; SHR at 70-79.) The state habeas court noted the reasonableness of trial counsel's performance and strategy (SHF Nos. 83-103; SHR at 325-30), noted certain deficiencies in the new expert's evaluation (SHF Nos. 1-8-33; SHR at 331-38), and reasonably found that trial counsel was not deficient in failing to canvass the field for more favorable experts than the two reasonably relied upon in preparation for trial. (SHF Nos. 82, 182-83; SHR at 324-25, 350.)

Feldman asserts that he is not complaining of a failure to obtain another expert opinion, but of trial counsel's failure to discover and use a prior diagnosis of bipolar disorder. (Pet. at 20; Reply at 8.) However, he disregards the role of the assisting mental health experts in these cases and the need for a sponsoring expert witness to present Feldman's asserted mental health disorder to the jury and to explain its significance in relation to the issues before them. *See* John M. Fabian, *Death Penalty Mitigation and the Role of the Forensic Psychologist*, 27 Law & Psychol. Rev. 73, 86-90 (2003) (evidence of mental illness such as bipolar disorder must be presented carefully or it may backfire because jurors may view it as aggravating--in some cases it is better to not present such evidence). Further, the state habeas court found that the new evidence presented a double-edged

sword that could have supported the prosecution's case for future dangerousness. (SHF Nos. 71, 85, 103, 131, 133, 154; SHR at 322, 325-26, 330, 337-338, 342.) These conclusions are reasonable. In *Cantu v. Thaler*, 632 F.3d 157 (5th Cir. 2011), the death-row inmate also complained of trial counsel's failure to investigate and present evidence of his bipolar disorder. The Court of Appeals in a *de novo* review concluded that counsel was not ineffective, noting the double-edged nature of the evidence. "The potentially detrimental results of such an examination could have strengthened the State's position that Cantu was a sociopath and thus a future danger, thereby warranting the death penalty." *Id.* at 164.

Feldman's trial counsel obtained expert assistance and evaluations regarding his mental health and decided to not present those expert opinions to the jury. (SHF No. 85; SHR at 325-26.) However, Feldman has also not disclosed such prior evaluations to this Court, or to the state court. (SHF Nos. 70-73; SHR at 322); *see* 28 U.S.C. § 2254(e)(2). Since trial counsel requested and obtained the assistance of experts not merely as impartial observers but as active participants in their investigation and preparation of a defense, these expert evaluations would reasonably be expected to affect the investigation and presentation of Feldman's defense and have not been shown deficient. Therefore, this Court must conclude that trial counsel reasonably relied upon their own experts in the investigation and presentation of their defense.

The state court reasonably concluded that the standard of *Strickland* was not satisfied, and this conclusion has not been shown incorrect, much less unreasonable. Feldman's fourth claim for relief is denied.

# VIII. EVIDENTIARY HEARING

"In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." *Schriro v. Landrigan*, 550 U.S. 465, 468, 127 S.Ct. 1933, 1937, 167 L.Ed.2d 836 (2007). Prior to the AEDPA, "[w]hen there is a factual dispute, [that,] if resolved in the petitioner's favor, would entitle [him] to relief and the state has not afforded the petitioner a full and fair evidentiary hearing, a federal habeas corpus petitioner [was] entitled to discovery and an evidentiary hearing." *Goodwin v. Johnson*, 132 F.3d 162, 178 (5th Cir. 1997). In *Schriro*, the Supreme Court observed that while the basic rule has not changed, the standards for granting relief have.

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.

*Schriro*, 550 U.S. 474, 127 S.Ct. at 1940 (footnote omitted) (internal citations omitted). Regarding any claim adjudicated on the merits, the proper standard is set forth in 28 U.S.C. § 2254(d). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court rulings be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. ___, 131 S.Ct. 1388, 1398 (2011) (internal citations omitted) (quoting *Harrington v. Richter*, 131 S.Ct. at 786, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). Federal habeas review under § 2254(d)(1) is, "limited to the record that was before the state court" *Cullen v. Pinholster*, 131 S.Ct. at 1398, and review under § 2254 (d)(2) is limited to the "determination of the facts in light of the evidence presented in the State court proceeding."

On the allegations and record before this court, an evidentiary hearing would not enable Feldman to establish a right to federal habeas relief. The only issue upon which an evidentiary hearing could be relevant is the fourth claim of ineffective assistance of trial counsel for failing to investigate and present mitigating evidence of a bipolar disorder. However, the undisputed evidence establishes trial counsel's reasonable reliance upon two qualified mental health experts in the investigation and trial of Feldman's case, and the double-edged nature of the alleged condition.[9] Even if facts were further developed in federal court in accordance with the allegations, it would not establish a right to federal habeas relief under the AEDPA. *See* 28 U.S.C. § 2254(d); *Cullen v. Pinholster*, 131 S.Ct. at 1398. Accordingly, Petitioner's alternate request for an evidentiary hearing is denied.

## IX. CONCLUSION

Petitioner has not shown that the adjudication of these claims by the state court either resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254(d). Therefore, the petition for writ of habeas corpus is denied.

In accordance with Fed. R. App. P. 22(b) and 28 U.S.C. § 2253(c) and after considering the record in this case, the court denies petitioner a certificate of appealability. The court finds that the

---

[9]As referenced in Section VII, B., Feldman did not disclose either to this court or to the state court the content of the expert mental health evaluations relied upon by trial counsel in deciding to not present such evidence to the jury. Despite this omission, such evidence appears to have been available to him and he has not otherwise shown that it "could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(ii). Therefore, to the extent that this evidence may have any bearing on this claim, Feldman "has failed to develop the factual basis" of this claim in state court and he is precluded from doing so here as well. *Id.*

petitioner has failed to show (1) that reasonable jurists would find this court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000). Petitioner has previously been allowed to proceed *in forma pauperis* and this status is continued for purposes of appeal.

IT IS SO ORDERED.

SIGNED this 3rd day of May, 2011.

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE